936 F.2d 687
 60 USLW 2021, Medicare&Medicaid Gu 39,455
 Saverio SENAPE, M.D., Plaintiff-Appellant,
v.
Joann A. CONSTANTINO, Deputy Commissioner, Division of
Medical Assistance, Cesar A. Perales, individually and as
Commissioner of the New York State Department of Social
Services, and the Department of Social Services, Defendants-Appellees.
 No. 804, Docket 90-7677.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 10, 1991.
Decided June 18, 1991.
 
 Robert C. Agee, White Plains, N.Y., for plaintiff-appellant.
 Carol Schechter, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Lawrence S. Kahn, Deputy Sol. Gen., and Robert J. Shack, Asst. Atty. Gen., of counsel), for defendants-appellees.
 Before WINTER and ALTIMARI, Circuit Judges, and WEXLER, District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 This appeal arises from the dismissal of a complaint brought under 42 U.S.C. Sec. 1983 seeking (1) to enjoin appellees from denying appellant's application for reenrollment as a physician-provider in New York State's Medicaid program and (2) to recover damages for the deprivation of property and liberty interests without due process. The district court held that appellant has no property interest in his continued enrollment as a Medicaid provider and that, even if he has such an interest, he was accorded due process. The district court also rejected appellant's deprivation of liberty claim on the ground that he failed to plead facts sufficient to establish the publication of stigmatizing information. 740 F.Supp. 249. For the reasons stated below, we affirm.
 
 BACKGROUND
 
 2
 In 1979, Saverio Senape, M.D., was enrolled as a qualified medical provider in New York's Medicaid program, which provides medical services to indigent people. See 42 U.S.C. Sec. 1396a et seq. (1988); N.Y. Social Services Law Sec. 363 et seq. (McKinney Supp.1991). The instant action arises out of a decision by state officials not to reenroll him.
 
 1. The Regulatory Scheme
 
 3
 Under New York Soc. Serv. Law Sec. 363-a (1) and (2), the Department of Social Services ("DSS" or "Department"), which administers the Medicaid program, is authorized to make regulations governing the selection of medical services providers.[1] See N.Y.Comp.Code R. & Regs. ("NYCRR"), tit. 18 Sec. 500 et seq. (1988). Two portions of these regulations--Parts 504 and 515--are pertinent to the instant appeal. We discuss each briefly.
 
 
 4
 Prior to 1987, a physician who had been accepted into the Medicaid program could be terminated only upon a finding of a failure to comply with DSS regulations, i.e., for cause. However, in January of that year, DSS issued a regulation under which all existing providers were required to apply for reenrollment. See 18 NYCRR Sec. 504.10. Judge Tenney explained the effect of these new regulations as follows:
 
 
 5
 Although DSS retains the authority to terminate a provider for cause, the new regulations in effect allow DSS, at its option, to invert the process. Instead of investigating each provider for deficiencies and terminating those found inadequate, DSS may require all providers to re-enroll en masse in the program and then choose whom it wishes to renew.
 
 
 6
 The standard governing reenrollment is the same as that applied to first-time applicants, "the best interest of the medical assistance program," 18 NYCRR Sec. 504.4(e)(2), and, although many factors enumerated in the regulation focus on past or current conduct or competence, id. at Sec. 504.5(a)(1)-(13), the regulation explicitly permits the Department to consider "any other factor which may affect the effective and efficient administration of the program, including, but not limited to, the current availability of medical care, services or supplies to recipients...." Id. at Sec. 504.5(a)(14). As the district court observed, the regulation affords DSS a mechanism by which a provider's participation may be terminated notwithstanding the applicant's apparent qualifications and lack of evidence of wrongdoing.[2]
 
 
 7
 By contrast, Part 515 sets forth the standards and procedures for sanctioning providers who engage in "unacceptable practices" such as fraud or other specifically enumerated violations of DSS regulations. See 18 NYCRR Sec. 515.2(a) and (b). A provider sanctioned under this provision is subject not only to termination of his reimbursement contract, see Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170 (2d Cir.1991), but to exclusion from the program for a reasonable period of time, censure and the recovery of overpayments. 18 NYCRR Sec. 515.3. Pursuant to federal regulations, moreover, notice of the provider's exclusion must be published. See 42 C.F.R. Sec. 1002.206(c) (1990).
 
 
 8
 A disappointed applicant for enrollment or reenrollment under Part 504 is afforded less procedural due process than a provider facing sanctions under Part 515. A provider whose enrollment or reenrollment application is denied under Section 504.10, or whose participation in a reimbursement contract is discontinued under Section 504.7(a), is not entitled to a hearing. Id. at Sec. 519.4(b). A provider charged with sanctionable practices, however, has the right to an evidentiary hearing. See 18 NYCRR Sec. 515.8.
 
 2. The Instant Action
 
 9
 In October 1987, appellant received a letter from DSS, sent according to a prearranged schedule involving all Medicaid providers, informing him that he would have to submit an application for reenrollment within sixty days. In November, shortly after appellant submitted the requisite forms, a DSS investigator visited appellant's office and requested copies of the medical records of ten patients. On March 8, 1988, DSS informed appellant that it had found various violations of DSS regulations in reviewing the patient records and had decided to terminate appellant's participation in the program effective immediately. Initially, the Department based its termination decision on Part 515, which permits, inter alia, the immediate suspension of a provider upon a determination that the health or welfare of Medicaid recipients would be endangered by the provider's continued participation in the program. Appellant promptly contested this ruling and submitted various documents to DSS for further review. On March 15, before responding to the Part 515 appeal, DSS informed appellant that, based on its review of patient charts, it had decided pursuant to Part 504 not to reenroll him in the program. At that time, DSS also advised appellant that he could submit a written appeal of the Part 504 decision, which he did. On April 18, DSS informed appellant that it had reversed its earlier Part 515 termination decision but that the Part 504 reenrollment appeal was still under consideration. On July 29, DSS told appellant that it had denied his Part 504 appeal and that his participation in the program would cease effective August 12.
 
 DISCUSSION
 
 10
 We assume for purposes of this appeal that DSS denied appellant's application for reenrollment under Part 504 because it was simpler than terminating appellant for cause under Part 515. By proceeding under Part 504, DSS avoided the need for an evidentiary hearing and availed itself of the discretion conferred by Section 504.5(a)(14). Appellant claims that this resort to Part 504 deprived him of a protected property right to continued enrollment in the Medicaid program and, additionally, of a liberty interest in his good name and professional reputation without due process. We disagree. In light of the broad discretion afforded state officials charged with administering the Medicaid program, a provider has no reasonable claim of entitlement to continued enrollment in that program. Nor does appellant's complaint plead facts sufficient to establish publication of stigmatizing information, an essential element of his deprivation of liberty claim.
 
 
 11
 Our previous decisions have not resolved the question of whether a qualified provider of medical services under the New York Medicaid program has a property right in that status. In Kelly Kare, Ltd. v. O'Rourke, we held that a provider has no right to "uninterrupted participation in the program, i.e., a continuing reimbursement contract," but added that "there may be a property interest in a provider's status as a qualified health-care provider--a question we need not and do not reach." 930 F.2d at 176. We thus stated:
 
 
 12
 There is a critical difference between being declared a qualified health-care provider and being awarded a contract to furnish health-care services. The refusal by a social services district to enter a contract with a qualified provider in no way affects the status of the provider. Such a disappointed provider remains free to seek a contract with a different social services district....
 
 
 13
 Id. Unlike Kelly Kare, however, Dr. Senape is asserting a property right in his continued enrollment in the Medicaid program--i.e., in his status as a qualified provider eligible to enter into reimbursement contracts with state and local entities. The instant appeal thus poses precisely the question left open in Kelly Kare.[3]
 
 
 14
 A property interest in the continued receipt of a governmental benefit must rest on "a legitimate claim of entitlement." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such an entitlement springs not from the Constitution itself but from " 'existing rules or understandings that stem from an independent source such as state law....' " Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting Board of Regents v. Roth, supra, at 577, 92 S.Ct. at 2709). As we stated in Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577 (2d Cir.1989):
 
 
 15
 Where the state provisions bestow a right that cannot properly be eliminated except for cause, that right constitutes property protected by procedural due process. On the other hand, the existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them.
 
 Id. at 581 (citations omitted).[4]
 
 16
 Citing Part 504, we observed in Plaza Health that "the combination of rights reserved by the State with regard to Medicaid providers, allowing DSS to terminate [contractual participation] without cause on 30 days' notice or to terminate or suspend immediately in certain circumstances, casts doubt on whether the provider's interest in continuing as a provider, either indefinitely or for any period without interruption, is a property right that is protected by due process." 878 F.2d at 582. Kelly Kare and 701 Pharmacy Corp., 930 F.2d 163 (2d Cir.1991), see supra note 3, have since highlighted the substantial discretion state officials have in determining the qualifications and status of New York Medicaid providers. To be sure, neither Kelly Kare nor 701 Pharmacy Corp. determined whether a provider was entitled to continued enrollment in the program, but each emphasized that officials have broad discretion in selecting providers. Kelly Kare upheld the State's right to terminate without cause specific reimbursement contracts--the indispensable item that makes one's status as a qualified provider economically significant. 701 Pharmacy Corp. upheld such discretion against an equal protection challenge. When combined with the obvious discretion conferred by the reenrollment provisions themselves, these decisions convince us that our doubts in Plaza Health were well-founded and that appellant has no property right to continued enrollment as a qualified provider. There is nothing in the status of qualified providers to suggest that such status is more of an entitlement than one's status as a party to a reimbursement contract. The discretion of New York Medicaid officials is similarly broad with respect to both, and there is therefore no reason to regard one as a property right but not the other.
 
 
 17
 We also reject appellant's contention that the reenrollment regulation is inconsistent with the enabling statute, which states that the Department shall issue regulations "establishing and maintaining standards for all noninstitutional health care and services rendered pursuant to this title, including but not limited to procedural standards relating to the revocation, suspension, limitation or annulment of qualification for participation as a provider" for incompetency, failure to meet program standards or threatening public health or safety. N.Y.Soc.Serv.Law Sec. 364(2)(b) (McKinney 1983) (emphasis added). That DSS must issue regulations governing the "for cause" termination of providers in no way precludes the Department from issuing other regulations reasonably necessary to advance the objectives of the program. We therefore find no merit to appellant's claim that the reenrollment procedure conflicts with the statutory scheme.
 
 
 18
 We now turn to appellant's deprivation of liberty claim. An essential element of a claim for damage to professional reputation is the publication of false information. See Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446-47 (2d Cir.1980). Appellant's complaint alleges that false information contained in the Department's correspondence was distributed to "other government agencies, the medical community, third party insurers and other persons." However, because appellant cited no specific instance of distribution, the district court granted appellees' motion to dismiss under Fed.R.Civ.P. 12(b)(6), stating:
 
 
 19
 Even giving Senape the benefit of the doubt that this ambiguous paragraph in his Complaint sufficiently alleges that DSS has already published this information, DSS has submitted a sworn affidavit denying that it has done so. See Tapp.Aff. p 33. Therefore, Senape has failed to create a genuine issue of material fact as to whether defendants have deprived him of a protected liberty interest.
 
 
 20
 Appellant does not challenge the district court's resort to matters outside the pleadings. Nor does he claim that, if given notice of the court's intention to do so as required by Fed.R.Civ.P. 12(b)(6), he would have submitted evidence indicating publication. Although he might well be entitled to such a remand, see Gutwein v. Roche Laboratories, 739 F.2d 93 (2d Cir.1984) (remand where insufficient time allowed to respond to summary judgment motion and party represents that contradictory evidence could have been obtained if ten-day notice period of Fed.R.Civ.P. 56(c) had been observed), his present failure to claim that he has evidence of publication indicates to us that a remand would be futile.
 
 
 21
 Affirmed.
 
 
 
 *
 The Hon. Leonard D. Wexler, United States District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 A "provider" is a person authorized to provide medical care, services or supplies to eligible recipients and to receive payment from Medicaid for the provision of such care, services and supplies. See N.Y.Comp.Code R. & Regs. ("NYCRR"), tit. 18, Sec. 504.1(16) and (19)
 
 
 [2]
 At the same time that the Department propounded its reenrollment regulation, it also codified the "at will" nature of providers' contractual participation in the program, see 18 NYCRR Sec. 504.7(a), the provision at issue in Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170 (2d Cir.1991), discussed infra
 
 
 [3]
 Our decision in 701 Pharmacy Corp. v. Perales, 930 F.2d 163 (2d Cir.1990), decided the same day as Kelly Kare, is not dispositive. In 701 Pharmacy Corp., we rejected an equal protection challenge to the uneven due process afforded "for cause" and "without cause" contract terminations. Appellants argued that the arbitrary nature of New York's termination provisions (under which a qualified provider may be terminated without cause and without an opportunity to submit a written request for reconsideration, see NYCRR Section 504.7(a)) could be demonstrated by comparing them to the enrollment provisions (under which even a first-time applicant denied enrollment has the right to request reconsideration, see NYCRR Section 504.5(e)(1)). While acknowledging the irony of affording first-time applicants for enrollment greater procedural rights than existing providers, we nevertheless upheld the procedural asymmetry as rational on the ground that "[i]n one year, the Department makes approximately 100 times the number of enrollment decisions as it does decisions to terminate under Sec. 504.7(a)" and that "[t]he written reconsideration procedure is thus aimed at minimizing the greater risk of error associated with an enrollment determination." 701 Pharmacy Corp., 930 F.2d at 169. However, 701 Pharmacy Corp. turned on equal protection rather than property issues and thus did not address the question posed by the instant appeal
 
 
 [4]
 Decisions prior to Plaza Health--see Oberlander v. Perales, 740 F.2d 116, 120 (2d Cir.1984) (no property interest in the future rate of reimbursements); Patchogue Nursing Center v. Bowen, 797 F.2d 1137, 1144-45 (2d Cir.1986), cert. denied, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987) (nursing home had a property right in continued participation in Medicaid but received adequate due process); Case v. Weinberger, 523 F.2d 602, 609-10 (2d Cir.1975) (same)--offer little guidance on the question raised in the instant matter because they predate the reenrollment scheme of Part 504