**In re MERCY HOSPITAL OF WATERTOWN, Debtor.**

**MERCY HOSPITAL OF WATERTOWN, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and Louis Sullivan, M.D., Secretary of Health and Human Services, New York State Department of Health and New York State Department of Social Services, Defendants.**

**Bankruptcy No. 90–02501.
Adv. No. 91–60012A.**

United States Bankruptcy Court,
N.D. New York.

Feb. 13, 1992.

Donna M. Quinn, Watertown, N.Y., Iseman, Cunningham, Reister & Hyde, Sp. Counsel, Albany, N.Y., for debtor; Robert H. Iseman, of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for U.S. Dept. of Health and Human Services; William F. Larkin, Asst. U.S. Atty., of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This adversary proceeding was originally commenced by Mercy Hospital of Watertown ("Mercy" or "Debtor"), on January 30, 1991, to enjoin the United States De-

partment of Health and Human Services ("HHS") from discontinuing reimbursement to the New York Department of Social Services ("DSS") under the federal Medicaid program. On May 30, 1991, Mercy filed an amended adversary complaint, adding the DSS and the New York State Department of Health ("DOH") as defendants in the adversary proceeding. On July 30, 1991, HHS moved to dismiss the adversary proceeding for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted, or alternatively, for summary judgment on the merits. In the interim, on August 16, 1991, Mercy moved for partial summary judgment on the issue of whether it was an Institution for Mental Disease ("IMD") as that term is defined by HHS regulations. After two adjournments, the Court denied Mercy's motion without prejudice by Order dated October 10, 1991, and adjourned the HHS motion.

By Order dated October 28, 1991, the Court granted Mercy leave to further amend its adversary complaint. On November 7, 1991, Mercy filed its Second Amended and Supplemented Complaint, seeking: a) a declaration that Mercy is not an IMD; b) an injunction prohibiting the prospective treatment of Mercy by HHS as an IMD; and c) modification of the automatic stay to protect Mercy's alleged interest in, and receipt of, Medicaid reimbursement for the provision of alcohol rehabilitation and detoxification services. Simultaneously, Mercy filed a Motion for Partial Summary Judgment which was argued before the Court on November 19, 1991 and decision reserved.

On December 4, 1991, HHS filed a motion to dismiss the Second Amended and Supplemented Complaint, or alternatively, for summary judgment. This motion substantially adopted the defenses HHS originally set forth in its earlier motion to dismiss Mercy's amended adversary complaint, and was scheduled for argument on December 23, 1991. The parties waived further oral argument, however, and after the receipt of memoranda of law, the matter was submitted for decision on December 23, 1991. Neither DOH nor DSS appeared at the argument of any motions considered herein.

## BACKGROUND

Since its founding in 1894, Mercy has provided health care services to the Watertown, New York community and its environs. Mercy holds an operating certificate from the DOH as a "general hospital," and until recently was an authorized "participating provider" of health care services under the federal Medicaid program.

The Medicaid program, enacted by Congress in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396u ("Medicaid"), is jointly administered by the federal government and the states in an effort to provide medical assistance to those who lack the income and resources necessary to meet the costs of appropriate medical care. Under Medicaid, HHS pays a portion of the funding required to provide such medical assistance in states which have in place a funding plan approved by HHS. Thus, participating health care providers are entitled to be reimbursed by the states for the provision of certain health care services to Medicaid recipients, and the states, in turn, are then reimbursed in part by the federal government.

States are reimbursed by HHS for medical assistance furnished to health care providers in connection with a broad range of services, including, *inter alia*, inpatient hospital services, skilled nursing facility services and outpatient and clinical services. However, HHS will not reimburse states which furnish medical assistance "with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for ... mental diseases." 42 U.S.C. § 1396d(a)(24)(B).

Mercy is presently authorized to provide certain licensed services, including the operation of 209 "acute care" or "inpatient" hospital beds. Of its 209 acute care beds, 152 are medical or surgical beds, and 57 are devoted to alcohol and psychiatric treatment. As described herein, Mercy has discontinued operation of its 152 medical/sur-

gical beds. Additionally, Mercy is authorized to operate 284 non-acute, long-term skilled nursing home beds, and also provides various mental health services to both inpatients and outpatients. With respect to other services offered by Mercy, a relatively high percentage of mental health and alcohol treatment patients are Medicaid recipients.

In the summer of 1990, Mercy, beset with financial difficulties, began to consider halting the operation of a substantial portion of its acute care services. At such time Mercy was informally advised by federal and New York State health officials that such action could result in Mercy being classified as an IMD, and thereby jeopardize Mercy's eligibility for Medicaid reimbursement. However, Mercy made an independent determination that such a reduction in its acute care operations would not cause it to be classified as an IMD, and on or about September 15, 1990, it ceased operation of its 152 medical/surgical beds. Mercy continued to operate its 57 alcohol/psychiatric beds, as well as its non-acute, skilled nursing beds, and also continued to provide mental health services and various outpatient services.

On October 15, 1990, Mercy filed for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). Shortly thereafter, Mercy was advised by the DOH that because it believed HHS would classify Mercy as an IMD and refuse to reimburse the DSS, it (DOH) had no choice but to cut off Mercy's Medicaid reimbursement. To avoid such a consequence, Mercy requested a determination from HHS that it was not an IMD.

On November 27, 1990, a meeting was convened in Washington, D.C., at which representatives of Mercy, HHS, and DOH were present. At this meeting, and in subsequent correspondence, HHS stated that for purposes of reimbursement for its mental health and alcohol related services, Mercy would be considered an IMD if it were found to have a predominance of mental health care beds as compared to non-mental health, acute care beds. HHS further stated that for the purposes of such a determi-

nation, Mercy could not "join" its skilled nursing facility with the two smaller acute care mental health and alcohol treatment units. HHS explained that because all of these units are separately certified for participation in the Medicaid program, they could not be considered in the aggregate as one institution for the purpose of determining IMD status.

Fearing that classification as an IMD would result in the loss of Medicaid benefits, Mercy commenced the instant adversary proceeding on January 30, 1991. On February 1, 1991, Mercy transferred its remaining acute care beds, namely the 57 psychiatric and alcohol treatment beds, to the operating certificate of House of the Good Samaritan, another participating provider of inpatient hospital services in Watertown. On March 5, 1991, the HHS notified Mercy that because the DOH had determined that Mercy had ceased operation of all its acute care beds as of February 1, 1991, its status as a participating provider under Medicaid had terminated effective February 1, 1991.

Mercy now seeks a determination that it is not an IMD, an injunction prohibiting prospective treatment by HHS as an IMD, and modification of the automatic stay to protect its interest in the future receipt of Medicaid reimbursement for provision of mental health and alcohol treatment services.

## ARGUMENTS

Mercy contends that HHS has actually made a determination that Mercy is an IMD, and that such determination is based upon an erroneous and unreasonable interpretation of HHS regulations concerning the definition of an IMD. HHS defines the term "IMD" as:

> an institution that is primarily engaged in providing diagnosis, treatment or care of persons with mental diseases, including medical attention, nursing care and related services. Whether an institution is an institution for mental diseases is determined by its overall character as that of a facility established and maintained primarily for the care and treat-

ment of individuals with mental diseases, whether or not it is licensed as such. 42 C.F.R. § 435.1009.

Mercy argues that HHS, in determining that Mercy is an IMD, did not consider the "overall character" of the hospital as a whole, as required by 42 C.F.R. § 435.1009. Mercy contends that the terms "institution" and "facility," as they are used in the regulation, refer to the entire Mercy Hospital corporation as a whole, which delivers all its health care services, regardless of Medicaid certification, under a single license, from a single building, directed by a single board of directors, administered by a single executive, and served by a single medical staff. Thus, Mercy maintains that it is not an IMD and urges a finding that the automatic stay imposed pursuant to Code § 362 prohibits any prospective denial by HHS of Medicaid reimbursement.

Mercy argues that the Court has jurisdiction of this adversary proceeding because the government has waived sovereign immunity by filing a proof of claim in this case. Additionally Mercy argues that this is a core proceeding under 28 U.S.C. § 157(b), or alternatively, that it is a related proceeding under 28 U.S.C. § 157(c)(2).

HHS asserts that it has not, in fact, determined that Mercy is an IMD, and that it is within the province of the state health agencies to make such a determination. HHS further asserts that this Court lacks both personal and subject matter jurisdiction over HHS because: 1) the United States has not waived its sovereign immunity from suit; 2) the Declaratory Judgment Act, 28 U.S.C. § 2201 prevents the Court from granting the relief urged by Mercy; 3) Mercy has no property interest in future receipt of Medicaid reimbursement; and 4) Mercy has failed to exhaust its administrative remedies.[1]

## DISCUSSION

The Court must initially determine whether it has jurisdiction of Mercy's mo-

tion, as well as the entire adversary proceeding. Mercy maintains that the Court has jurisdiction, based upon 28 U.S.C. § 1334, which provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

However, it is well established that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.... A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (citations omitted).

■ 28 U.S.C. § 1334 does not contain a waiver of sovereign immunity, and therefore does not in and of itself confer jurisdiction over the United States on this Court. *Anderson v. Federal Deposit Ins. Corp.*, 114 B.R. 446, 448 (D.S.C.1989); *aff'd*, 918 F.2d 1139 (4th Cir.1990); *In re Prudential Lines, Inc.*, 79 B.R. 167, 182 (Bankr.S.D.N.Y.1987); *Matter of Interstate Motor Freight System*, 62 B.R. 805, 809 (Bankr.W.D.Mich.1986).

■ However, Mercy argues that HHS has waived sovereign immunity pursuant to Code §§ 106(a) and (c). Code § 106(a) states:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transac-

---

1. HHS also raises various procedural defects with respect to the service and content of Mercy's Second Amended and Supplemented Complaint and Second Motion for Partial Summary

Judgment. However, for the reasons set forth herein, it is unnecessary to consider these objections.

tion or occurrence out of which such governmental unit's claim arose.

Under Code § 106(a), where a governmental unit files a proof of claim in a bankruptcy case, it thereby waives sovereign immunity with respect to claims belonging to the bankruptcy estate which arise from the same transaction or occurrence upon which the governmental unit's proof of claim is based. *See Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989); *In re Rebel Coal Co., Inc.*, 944 F.2d 320, 321 (6th Cir.1991); *Ashbrook v. Block*, 917 F.2d 918, 923 (6th Cir.1990); *In re Shelby County Healthcare Services of Al, Inc.*, 80 B.R. 555, 561 (Bankr.N.D.Ga.1987). Thus, the waiver contained in Code § 106(a) is limited, and only takes effect where the bankruptcy estate asserts a compulsory counterclaim, which is property of the estate, against a governmental unit. *Id.*

▮ In the instant case, HHS has filed a proof of claim for recoupment of alleged overpayments made to the Debtor pursuant to the federal Medicare program. For a waiver of sovereign immunity to obtain under Code § 106(a), Mercy's "claim" must bear a logical relationship to that of HHS. *Ashbrook v. Block*, 917 F.2d at 923; *In re Fernandez*, 132 B.R. 775, 780 (M.D.Fla. 1991). Such a logical relationship exists if: 1) the issues of fact and law raised by the claim and counterclaim are largely the same; 2) res judicata would bar a subsequent suit on the counterclaim if the court were not to take jurisdiction; and 3) substantially the same evidence would support or refute both the claim and the counterclaim. *Ashbrook v. Block*, 917 F.2d at 923. *See also In re Rebel Coal Co., Inc.*, 944 F.2d at 321–22.

It is questionable whether Mercy, by its motion for declaratory and injunctive relief, is indeed asserting a "claim" against HHS, as that term is defined in the Code.[2] How-

ever, even if Mercy can be said to be asserting a claim against HHS, such claim does not bear a logical relationship to the claim for recoupment of Medicare disbursements filed by HHS. Mercy's "claim" arises not in connection with HHS' attempt to collect Medicare overpayments, but rather as a result of its perception that HHS has determined it to be an IMD for purposes of receiving Medicaid reimbursement. Thus, it is clear that each claim implicates a different statute, and requires resolution of separate legal and factual issues. Additionally, resolution of HHS' claim would not have res judicata effect on Mercy's "claim" in another forum.

Based upon the foregoing, Code § 106(a) seemingly does not operate as a waiver of sovereign immunity, as Mercy cannot be said to be asserting a compulsory counterclaim against HHS. However, Mercy appears to argue that HHS, in addition to filing its aforementioned formal proof of claim for Medicare recoupment, has also asserted an "informal" proof of claim which is somehow connected to Mercy's "counterclaim" relating to the IMD question.

Mercy's contention is based on the result reached in *In re Town & Country Home Nursing Services, Inc.*, 112 B.R. 329 (9th Cir. BAP 1990), *aff'd*, 1992 WL 88700 (9th Cir.1992). There, HHS alleged that the debtor, a nursing home operator, had been overpaid on its Medicare contract. Instead of filing a proof of claim, as was done in the instant case, HHS offset (both pre and post-petition) the overpayments from its monthly disbursements under the Medicare contract. The Ninth Circuit upheld the Bankruptcy Appellate Panel's determination that the government's action in offsetting its claim was equivalent to actual submission of a claim, and that such action operated to waive sovereign immunity under Code § 106(a). Mercy also argues that

---

**2.** In general terms, Code § 101(5) defines "claim" for purposes of the Code as a "right to payment." *Hoffman, supra*, 492 U.S. at 102, 109 S.Ct. at 2823, strongly suggests that a governmental unit can waive sovereign immunity under Code § 106(a) only as to claims which assert a right to payment from the governmental

unit. New York Medicaid providers have no right to payment of future Medicaid reimbursement. *Oberlander v. Perales*, 740 F.2d 116, 120 (2nd Cir.1984). *See also Sutphin Pharmacy, Inc. v. Perales*, 770 F.Supp. 168, 173 n. 9 (S.D.N.Y. 1991).

because HHS "has behaved like a creditor, appeared at numerous hearings before the bankruptcy court, and involved itself directly in the deliberations of Mercy's efforts to reorganize," cause exists for finding that HHS has filed an informal proof of claim in the instant case. *See United States v. Inslaw, Inc.,* 113 B.R. 802 (D.D.C.1989) (existence of government's claims derived from its conduct), *rev'd* on other grounds, 932 F.2d 1467 (D.C.Cir.1991).

However, both *Town & Country* and *Inslaw* are inapposite to the present case. First, while it is true that HHS has appeared as a creditor throughout this case, it has done so in connection with its claim for Medicare recoupment. While Mercy has been met with resistance from HHS in this adversary proceeding, as well as in a variety of contexts facially unrelated to HHS' claim for Medicare recoupment, such resistance has not risen to a level which indicates that HHS is seeking something other than prompt and full payment on its claim for recoupment of Medicare payments.

Additionally, it is unclear what additional claim HHS could legitimately assert. The determinations in *Town & Country* and *Inslaw* were predicated upon the fact that the creditors' actions therein indicated the nature and amount of their respective informal claims, and it was thus apparent that the debtors' claims were, in fact, counterclaims. *See Inslaw,* 113 B.R. at 812. In *Town & Country,* the government's claim was in the nature of an offset; in *Inslaw,* the claim was based upon a violation of a licensing agreement. In the instant case, it is difficult to conceive of a HHS claim, i.e. right to payment, against Mercy which could give rise to Mercy's "claim" for a declaratory judgment on the IMD question. Indeed, nothing in the record indicates that Mercy owes HHS moneys (other than for Medicare overpayments) for which even an

informal claim could be found to be asserted.

The Court concludes that, although HHS has filed a proof of claim, Mercy's motion for declaratory and injunctive relief does not arise out of the same transaction or occurrence which gave rise to such claim.[3] Therefore, HHS has not waived sovereign immunity pursuant to Code § 106(a).[4]

■ However, Mercy also maintains that HHS has waived sovereign immunity by virtue of Code § 106(c) which provides:

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such provision binds governmental units.

Thus, under Code § 106(c), "a 'determination' by the bankruptcy court of an 'issue' 'binds governmental units.'" *Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. at 102, 109 S.Ct. at 2823. Code § 106(c) does not allow a money judgment to be issued against a governmental unit which has not filed a proof of claim, but rather, the section "is more indicative of declaratory and injunctive relief" sought pursuant to a Code provision containing the requisite trigger words specified in Code § 106(c)(1). *See Id.*

Here, Mercy is seeking a declaratory judgment that it is not an IMD, an injunction prohibiting the prospective treatment of Mercy as an IMD, and extension of the automatic stay pursuant to Code § 362 to ensure future receipt of Medicaid reimbursement. While Code § 106(c) may apply to motions for declaratory and injunctive relief, the declaratory and injunctive

---

**3.** The court does not make a finding as to whether Mercy's "claim" for declaratory and injunctive relief with respect to the IMD issue is property of the estate.

**4.** Both DOH and DSS have assumed passive roles in this adversary proceeding, and have not filed any proofs of claim. Though other state

agencies have filed claims in this case, such claims do not arise out of the same transaction or occurrence as does Mercy's claim, and thus do not effectuate a waiver of sovereign immunity by the state. *See In re Four Seasons Care Centers, Inc.,* 119 B.R. 681, 684 (Bankr.D.Minn. 1990).

relief sought by Mercy relates solely to the question of whether Mercy is an IMD, which does not implicate any provision of the Code, let alone a section of the Code to which Code § 106(c) applies.[5]

Mercy seems to infer that HHS violated the automatic stay by terminating its property rights under the Medicaid program. However, aside from the factual question of whether HHS has taken any affirmative action to reclassify Mercy as an IMD, the Court finds that Mercy does not have a property interest in either the future receipt of Medicaid funds, or in continued status as a qualified provider of health care services.[6]

Mercy relies on *Patchogue Nursing Center v. Bowen*, 797 F.2d 1137 (2d Cir.1986), for its argument that continued status as a Medicaid provider is a property right. In *Patchogue*, the Second Circuit was faced solely with the question of whether HHS had deprived a nursing facility of due process by terminating Medicaid reimbursement without providing an adequate hearing. The focus in *Patchogue* was entirely on the sufficiency of the hearing.

The Second Circuit prefaced its constitutional due process analysis by stating that "[h]ealth care providers have a constitutionally protected property interest in continued participation in the Medicare and Medicaid programs." *Id.* at 1144–45. This was the extent of the court's analysis with respect to the existence of such a property right. Because neither party denied the existence of a property right in *Patchogue*, the Second Circuit found it unnecessary to state that, there, as in all other cases, a property interest must rest on "a legit-imate claim of entitlement," and is created not by the Constitution, but "by existing rules or understandings that stem from an independent source such as state law." *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See also Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

Thus, the existence of a property interest in the Medicaid program is dependent on existing state law. *See Senape v. Constantino*, 936 F.2d 687 (2d Cir.1991); *Tekkno Laboratories, Inc. v. Perales*, 933 F.2d 1093 (2d Cir.1991); *701 Pharmacy Corp. v. Perales*, 930 F.2d 163 (2d Cir.1991); *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170 (2d Cir.1991); *Plaza Health Laboratories*, 878 F.2d 577 (2d Cir.1989). In *Kelly Kare*, the Second Circuit, stating that its decision was not inconsistent with *Patchogue*, held that New York law did not create a property interest in continued participation in the Medicaid program. Mercy argues that *Patchogue* and *Kelly Kare* stand for the proposition that health care providers have a property interest in their status as providers. However, the *Kelly Kare* court stated:

> We discern ... no property interest in continued participation. Notwithstanding that there may be a property interest in a provider's status as a qualified health-care provider—a question we need not and do not reach ...

930 F.2d at 176.

From *Patchogue* through *Kelly Kare*, then, the question of whether an entity has a property interest in its status as a health care provider was left unanswered by the Second Circuit. This question has been

---

**5.** Mercy asserts that is entitled to declaratory and injunctive relief pursuant to Federal Rule of Bankruptcy Procedure ("Fed.R.Bankr.P.") 7001(9) as well as Code § 105. However, neither of these provisions effectuate a waiver of sovereign immunity under Code § 106(c). Code § 105 does not contain the requisite trigger words "creditor," "entity," or "governmental unit," and Fed.R.Bankr.P. 7001 is not a provision of title 11, but rather a rule of procedure related to title 11.

**6.** Nowhere in the record does Mercy expressly allege that HHS has violated the automatic stay.

In fact, Mercy raised Code § 362 for the first time in its Second Amended and Supplemented Complaint, which does not allege such a violation, but rather, seeks modification and "extension" of the stay to ensure future receipt of Medicaid payments.

Additionally, while New York Medicaid providers have no right to future payments, *see supra*, Note 2, the Court will herein address the argument set forth in Mercy's Memorandum of Law that there is a property right in one's status as a qualified health care provider.

resolved, however, by the decision in *Senape v. Constantino*, 936 F.2d at 687. There, the Second Circuit stated:

> *Kelly Kare* and *701 Pharmacy Corp.* (citations omitted) have since highlighted the substantial discretion state officials have in determining the qualifications and status of New York Medicaid providers ... When combined with the obvious discretion conferred by the reenrollment provisions themselves, these decisions convince us that our doubts in *Plaza Health* were well-founded and that appellant has no property right to continued enrollment as a qualified provider. There is nothing in the status of qualified providers to suggest that such status is more of an entitlement than one's status as a party to a reimbursement contract.

*Id.* at 690–91.

After *Senape*, it is clear that New York Medicaid providers have neither a property interest in future Medicaid reimbursement, nor in their status as qualified providers. Because it is clear that no such property interest is present here, Mercy's invocation of Code § 362, even if it is claiming a violation of the stay, is misplaced.

 Mercy appears to argue that because it has invoked Code § 362, regardless of how tenuously Code § 362 relates to this adversary proceeding, HHS has waived sovereign immunity with respect to the IMD question. Such an argument however, does not comport with the requirement that any waiver of sovereign immunity must be strictly construed in favor of the sovereign. *See, e.g., Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983); *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). Also, if the Court were to embrace this argument, sovereign immunity under Code § 106(c) would be rendered illusory whenever a debtor asserted a peripheral or meritless claim within the framework of a larger issue as to which such immunity was asserted.

The waiver of sovereign immunity under Code § 106(c) is clearly limited to the determination of separate issues arising under certain Code provisions, and HHS has not waived sovereign immunity under Code § 106(c) with respect to the IMD issue. *See In re Prudential Lines, Inc.*, 79 B.R. 167, 180–81 (Bankr.S.D.N.Y.1987) (sovereign immunity not waived for breach of contract claims not based on any provisions of Code).

Based upon the foregoing discussion, the Court finds that neither HHS, DOH nor DSS have waived sovereign immunity in this adversary proceeding. Therefore, the Court concludes that it has no jurisdiction over this adversary proceeding. It is therefore unnecessary to address the additional defenses raised by HHS or Mercy's most recent Motion for Partial Summary Judgment, and Mercy's Second Amended and Supplemented complaint must be, dismissed.

IT IS SO ORDERED.