09-2327-cv
Chase Group Alliance v. City of New York Department of Finance

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

AUGUST TERM, 2009

(Argued: January 20, 2010          Decided: September 14, 2010)

Docket No. 09-2327-cv

------------------------------------------------------------------

CHASE GROUP ALLIANCE LLC, ESQUIRE GROUP ESTATES LLC, VINTAGE VENTURES LLC,

     Plaintiffs-Appellants,

     v.

CITY OF NEW YORK DEPARTMENT OF FINANCE, MARTHA E. STARK, Finance Commissioner of New York, CITY OF NEW YORK, DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, RAFAEL CESTERO, Commissioner of New York City Department of Housing Preservation and Development, DEBRA A. THOMAS, Director of Article 7A Programs at the New York City Department of Housing Preservation and Development,

     Defendants-Appellees.

------------------------------------------------------------------

B e f o r e:   WINTER, WALKER, and POOLER, Circuit Judges.

     Appeal from a dismissal of a complaint pursuant to Rule 12(b)(6) in the United States District Court for the Southern District of New York (William H. Pauley III, Judge).  Appellants claim their right to due process was violated by liens placed upon their properties by the City.  Because the complaint alleges that New York law afforded appellants a right to notice and access to a tribunal to assert their objections before the liens

1

were imposed, appellants' right to due process was not violated. We therefore affirm.

ROBERT J. TOLCHIN (Oleg Rivkin, Fox Horan & Camerini, LLP, New York, New York, on the brief), The Berkman Law Office, LLC, Brooklyn, New York, for Appellants.

JULIAN L. KALKSTEIN, Assistant Corporation Counsel of the City of New York (Michael Cardozo, Corporation Counsel of the City of New York; Larry A. Sonnenshein, of counsel), New York, New York, for Appellees.

WINTER, Circuit Judge:

Appellants are owners of three apartment buildings in New York City. They sued the City of New York and various City agencies and officials, claiming that the City defendants imposed liens on the properties without giving appellants prior notice of the liens or securing the approval of the New York Housing Court, as required by an order of that court. Judge Pauley dismissed their complaint. We affirm because the complaint itself alleges that the Housing Court order afforded appellants a right to notice and access to New York courts before the imposition of valid liens. The availability of this process satisfied due process.

BACKGROUND

Because this is an appeal from a dismissal under Fed. R. Civ. P. 12(b)(6), we view the facts alleged in the complaint in

2

the light most favorable to the appellants. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

The complaint alleged the following. Tenants of three apartment buildings in New York City commenced an action in the New York City Civil Court, Housing Part under Article 7A of the New York Real Property Actions and Proceedings Law. The tenants sought the appointment of a "7A Administrator" to oversee the properties and to remedy housing code violations. The Housing Court issued an order appointing Peter Nakos as the 7A Administrator for the properties.

The Housing Court's order gave the 7A Administrator authority to collect and use rents, "subject to the Court's direction, to remedy the conditions alleged in the Petition, any violations of record issued by [the New York City Housing Preservation Department ("HPD")] . . . and to undertake work as authorized by the Real Property Actions and Proceedings Law § 778(1) . . . ." The order authorized the 7A Administrator to use rent monies to "[o]rder the necessary materials, labor and services to remove or remedy the conditions alleged in the Petition, and to remedy all violations currently on record with HPD . . . ." The 7A Administrator was also given authority to borrow money when necessary. In this respect, the Housing Court's order provided that the 7A Administrator could:

> Borrow funds from HPD or other governmental entity
> for repairs at the Premises that are necessary to

3

implement the objectives of this Judgment and enter into an agreement with HPD or other governmental entity for the repayment of such monies. . . . The Administrator may apply for any loan from a bank or lending institution or grant available for the purposes of repair and rehabilitation of the Premises or which are otherwise made available through any governmentally administered or subsidized program.

However, the order limited the 7A Administrator's authority to

accept loans that would result in liens against the properties:

[A]ny loan which would result in a lien on the Premises may not be accepted without approval of the Court, which approval shall be sought upon notice to the Premises' owner or attorney for the owner and all other parties to this proceeding. Said approval may be sought without formal motion procedure so long as at least eight days' written notice of such approval is given to the owner or attorney thereof, and any other interested parties. The Court may set such procedures as are reasonable to hear any objections to such application, and if any party objects to its proposal loan they may bring an order to show cause or seek such other remedy as may be appropriate.

The Housing Court's order also set forth record-keeping and

reporting requirements. Within thirty days of the order's

issuance, the 7A Administrator was required to file with the HPD

and with all relevant parties a plan for the provision of

rehabilitative services. The order further required that the 7A

Administrator submit to both the Housing Court and to HPD monthly

financial statements of all receipts and expenditures.

The provisions of the Housing Court's order mirror statutory

provisions in Article 7A that lay out the scope of authority

given to a 7A administrator. That law provides in relevant part:

4

"Any administrator is authorized and empowered <u>in accordance with the direction of the court</u>, to order the necessary materials, labor and services to remove or remedy the conditions specified in the judgment, and to make disbursements in payment thereof; and to demand, collect and receive the rents from the tenants . . . ." N.Y. Real Prop. Acts. § 778(1) (emphasis added). As to a 7A administrator's authority to encumber properties placed in its care, Article 7A provides:

> In addition, such administrator is authorized and empowered <u>in accordance with the direction of the court</u> to accept and repay such moneys as may be received from the department charged with enforcement of the housing maintenance code of the city of New York for the purpose of replacing or substantially rehabilitating systems or making other repairs or capital improvements authorized by the court. All moneys expended by the department pursuant to the foregoing shall constitute a debt recoverable from the owner and a lien upon the building and lot, and upon the rents and other income thereof.

<u>Id.</u> (emphasis added). Article 7A also sets out similar reporting requirements. For example, it requires that the administrator submit work plans and make publicly available all receipts and expenditures. <u>Id.</u> at §§ 778, 779.

At some point after the appointment of Nakos as the 7A Administrator, appellants purchased the properties in question. They allege that the 7A Administrator subsequently accepted $712,567.55 in loans from HPD, all of which the New York City Department of Finance has "purported to deem . . . to be liens" against the properties and has so filed them. It further alleges

5

that HPD granted, and the 7A Administrator accepted, these loans without prior notice to appellants or court approval. The complaint asserts that this conduct not only deprived appellants of "rights that the plaintiffs plainly were entitled to under the Housing Court Order[]" but also of their due process rights under the Fourteenth Amendment.[1] In this respect, the complaint asserts that the 7A Administrator's unilateral decision to encumber the properties deprived appellants of any "opportunity to contest the amount of the loans, or the necessity or appropriateness of the work which the 7A administrator planned to carry out with the proceeds of such loans."

The complaint requests that the district court issue an order: (i) enjoining the City from placing any additional liens on the properties; (ii) prohibiting the City from either selling or transferring the existing liens to a third party; and (iii) directing that the City remove the existing $712,567.55 in liens from the properties immediately.

Applying the Mathews v. Eldridge, 424 U.S. 319 (1976), balancing test, the district court granted the City's motion to dismiss for failure to state a claim. The district court concluded that pre-deprivation process would: (i) "impede the 7A Administrator's ability to carry out his functions in a timely

---

[1]The complaint also alleges a violation of due process under the New York Constitution.

6

manner"; (ii) "impose a costly burden on Defendants"; and (iii) "endanger the safety of those living at the Properties by impeding the 7A Administrator's actions."  Given these considerations and the fact that appellants already "were given adequate notice of the pendency of the 7A Proceeding and ample opportunity to respond and protect their interests," it found that appellants had failed to state a due process claim.

This appeal followed.  We affirm but on different grounds.

DISCUSSION

As noted, we review the grant of a Rule 12(b)(6) motion to dismiss de novo, "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  Chambers, 282 F.3d at 152.  Because our review is de novo, "we are free to affirm the decision below on dispositive but different grounds."  Primetime 24 Joint Venture v. Nat'l Broad. Co., 219 F.3d 92, 103 (2d Cir. 2000).  We will affirm "only if the plaintiff fails to provide factual allegations sufficient to raise a right to relief above the speculative level."  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008) (internal quotation marks omitted).

Appellants claim that the imposition of liens on the properties by the City violated their Fourteenth Amendment due process rights.  "An essential principle of due process is that a

7

deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks omitted). The requisite notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). With respect to determining the need to provide an opportunity to be heard, Mathews identified three relevant factors: (i) the private interest affected by official action; (ii) the risk of erroneous deprivation under existing procedures and probable value of additional or substitute safeguards; and (iii) the interest of the government. 424 U.S. at 335.

The parties dispute whether Mathews entitles appellants to a process affording a pre-deprivation hearing. The district court held that it does not, because of the need for expedition, the cost to the defendants, and the danger to tenants of continuing violations. We disagree.

Absent exigent or emergency circumstances, the property interest here was sufficiently significant, and the risk of erroneous deprivation sufficiently great, that some pre-deprivation procedural protection was required. See Connecticut v. Doehr, 501 U.S. 1, 12, 18 (1991) ("[E]ven the temporary or

8

partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection. . . . [T]he [state] provision before us, by failing to provide a preattachment hearing without at least requiring a showing of some exigent circumstances, clearly falls short of the demands of due process."); Burtnieks v. City of New York, 716 F.2d 982, 987 (2d Cir. 1983) ("Where a deprivation of property is involved, the aggrieved individual must be given 'an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)).

However, the kind of pre-deprivation hearing required by due process depends upon the nature of the issues and the relative weight of the Mathews factors. Monserrate v. New York State Senate, 599 F.3d 148, 158 (2d Cir. 2010); Spinelli v. City of New York, 579 F.3d 160, 169-70 (2d Cir. 2009). In the present matter, we believe that due process requires no more than notice and an opportunity for the owner to contest the overall legitimacy of

9

the need for the proposed repairs and renovations and the reasonableness of the amounts to be borrowed.[2]

As for the need for expedition, the hearing can be tailored in the discretion of the pre-deprivation-hearing court to meet whatever exigencies exist in a particular case. Karpova v. Snow, 497 F.3d 262, 270-71 (2d Cir. 2007); Interboro Inst., Inc. v. Foley, 985 F.2d 90, 93 (2d. Cir. 1993); Oberlander v. Perales, 740 F.2d 116, 120-21 (2d Cir. 1984) (superceded by statute on other grounds, as stated by Senape v. Constantino, 936 F.2d 687, 690 n.4 (2d Cir. 1991)). The prior hearing held with regard to the appointment of a 7A administrator should have resulted in findings sufficient to constitute an adjudication of many of the needed repairs and renovations. The Housing Court order and statute also require the submission of plans for repairs and renovations. Likewise, obtaining a loan will typically require a repair and renovation plan of some detail, including likely costs, which justifies the amount to be borrowed.

Thus, the requirements of due process can be satisfied if lien or loan approval is largely based on papers already in

---

[2]An owner of property for which an administrator has been appointed may be presumed to be informed of the property's deficiencies at the time of the appointment or at any later time when the owner had access to the property. An owner who purchases the property after the appointment of an administrator, thereby knowing of the existence of deficiencies that may result in loans that become liens, may be given some access in the discretion of the court but, having voluntarily accepted the obvious risks, is in no position to delay matters unreasonably by demanding to learn more about the property purchased.

10

existence (and usually in the record of proceedings of the Housing Court); the hearing can be limited to the reasonableness of the overall plan and its costs, avoiding quibbles over every length of pipe or sheet of wallboard.  Moreover, nothing in due process requires that separate applications be made for each loan rather than an application for the total amount to be borrowed for particular aspects of the project.

As for the cost to the 7A administrator of seeking approval for loans, there is nothing before us to suggest that such costs will be exorbitant given the prior hearing leading to the Administrator's appointment, the 7A administrator's need to establish a plan before obtaining loans, and a hearing that focuses on overall legitimacy of need and reasonableness of the amount to be borrowed.

Moreover, the costs of seeking approval may benefit the tenants, the intended beneficiaries of the statutory scheme, because approval of the borrowing increases both the oversight and accountability of the Administrator.  Authorizing borrowing without oversight or accountability is no more in the tenants' interest than an owner's use of a pre-deprivation hearing to increase the cost of the imposition of a lien.

Any ongoing danger to tenants is a vital consideration, but there is absolutely nothing before us to suggest that this was a factor in the present matter.  For example, the dates of the

11

Housing Court orders indicate that relevant events took place over months and years.

We turn now to the question of whether appellants were denied an appropriate pre-deprivation hearing. While appellants may have adequately alleged that liens invalid under state law were imposed on their properties, that allegation does not suffice to state a claim under Section 1983 for relief based on a procedural due process violation. Due process requires only that the state afford a party threatened with a deprivation of property a process involving pre-deprivation notice and access to a tribunal in which the merits of the deprivation may be fairly challenged. See Loudermill, 470 U.S. at 542; Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 466-67 (2d Cir. 2006); Interboro, 985 F.2d at 93; Oberlander, 740 F.2d at 120. No particular kind of tribunal is required so long as the one provided is appropriate in light of issues at stake. Interboro, 985 F.2d at 93; Oberlander, 740 F.2d at 120-21. If such a

process is in place, due process is satisfied.[3]  *Interboro*, 985 F.2d at 93-94; *Oberlander*, 740 F.2d at 120-21.

The problem with appellants' claim is that the complaint itself alleges that New York afforded them pre-deprivation protection by means of court orders.  According to the complaint, the Housing Court orders required notice and a court hearing, at which appellants could contest proposed loans that might result in liens.  It is hard to conceive of a remedy more attuned to appellants' claim than a court order preventing the imposition of a lien without a notice, hearing, and court approval.  Indeed, such an order is much of the relief they seek in the present

[3]Appellants' arguments seek to gain some superficial appeal by conflating the governmental character of the party seeking to impose the liens, the City, with the governmental action challenged, the imposition of the liens.  However, whether the party purporting to impose the liens is a public or private entity is irrelevant here because the constitutional harms claimed are the liens, the validity of which depends entirely on the Housing Court's authority.  The appropriate constitutional analysis, therefore, focuses on the Housing Court's processes and does not turn in any way on whether the lien is asserted by the City or a private bank.

Even if the pertinent constitutional harm was the City's "purport[ing] to deem" to have a lien, appellants would have difficulty surmounting the argument that no pre-deprivation notice and hearing was required because the deprivation was random and unauthorized.  *See Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy.").  The complaint alleges nothing to suggest that any violation of the Housing Court's order was pursuant to a statute, code, regulation, or custom, *see, e.g.*, *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (noting that post-deprivation procedures will not necessarily satisfy due process "[w]hen the deprivation occurs in the more structured environment of established State procedures, rather than random acts"), or made by a final decisionmaker, *see e.g.*, *Velez v. Levy*, 401 F.3d 75, 91-92 & n.14 (2d Cir. 2005) (stating that "post-deprivation remedies do not suffice where the government actor in question is a high ranking official with final authority over significant matters") (internal quotation marks omitted).  To the contrary, the complaint is at pains to emphasize that the purported imposition of a lien violated a Housing Court order.

13

action. The Housing Court order, therefore, provided all the process that was constitutionally due at pertinent times.

The complaint does not allege what, if any, action was taken by appellants or the Housing Court to enforce the Housing Court order. Appellants suggested at oral argument that an unsatisfactory ruling had emanated from the Housing Court, from which they had taken an appeal, which is still pending. However, even if the Housing Court erred, such an error does not itself become a due process violation to be remedied in a Section 1983 action. See, e.g., McDarby v. Dinkins, 907 F.2d 1334, 1337 (2d Cir. 1990) ("A breach of procedural requirements does not create a due process violation unless an individual was denied a fair forum for protecting his state rights.") (internal quotation marks omitted). The fact that a state proceeding is required by due process does not mean that Section 1983 provides a remedy for every error committed in the state proceeding. So long as state appellate remedies are available, a Section 1983 action is not an available vehicle for relief.[4] See, e.g., New York State Nat'l Org. for Women v. Pataki, 261 F.3d 156, 168 (2d Cir. 2001) (holding that even if the New York State Division of Human Rights

---

[4]Similarly, we have recognized that a party cannot bring a Section 1983 claim for violation of the Takings Clause when no effort was made to seek compensation from the state, provided it has a "'reasonable certain and adequate provision for obtaining compensation.'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 379-80 (2d Cir. 1995) (quoting Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 (1985)).

14

subjected discrimination claims to unreasonable delay in processing, the plaintiffs "could have brought an Article 78 proceeding to mandamus Division officials to perform certain acts" and therefore had adequate process).

This is not by any means to say that valid Section 1983 claims based on due process violations require exhaustion of state remedies. But "[w]hen § 1983 claims allege procedural due process violations, we nonetheless evaluate whether state remedies exist because that inquiry goes to whether a constitutional violation has occurred at all." Rivera-Powell, 470 F.3d at 468 n.12; see also N.Y. State Nat'l Org. for Women, 261 F.3d at 169 ("Exhaustion simpliciter is analytically distinct from the requirement that the harm alleged has occurred. Under the jurisprudence, a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.") (internal quotation marks and alteration omitted).

CONCLUSION

We therefore affirm.

15