857 F.Supp. 85 (1994)
NATIONAL ASSOCIATION OF PSYCHIATRIC TREATMENT CENTERS FOR CHILDREN, Plaintiff,
v.
Eric MENDEZ, Jr., M.D., Assistant Secretary for Defense, and Paul T. McDavid, Director, Office of Civilian Health & Medical Program for the Uniformed Services, Defendants.
Civ. A. No. 92-1774 SSH.
United States District Court, District of Columbia.
July 6, 1994.
*86 *87 *88 W. Allen David, Washington, DC, for plaintiff.
Marsha Stelson Edney, Civ. Div., U.S. Dept. of Justice, Washington, DC, for defendants.

OPINION
STANLEY S. HARRIS, District Judge.
Before the Court are defendants' motion to dismiss, plaintiff's opposition, and defendants' reply. Also before the Court are plaintiff's and defendants' cross-motions for summary judgment and the oppositions and replies thereto. Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its analysis for the benefit of the parties. Fed.R.Civ.P. 52(a).

Background
Plaintiff, a nonprofit trade association of residential treatment centers ("RTCs") providing care and treatment to emotionally ill youths, challenges several aspects of defendants' management of the Civilian Health and Military Program of the Uniformed Services program ("CHAMPUS").[1] CHAMPUS is a health care benefit program for retired members and dependents of active and retired members of the uniformed services. 32 C.F.R. § 199.3. CHAMPUS supplements the direct medical care system provided by the uniformed services, and is designed to provide financial assistance on a cost-sharing basis to CHAMPUS beneficiaries for certain medical care obtained from civilian sources. Id. § 199.4(a). Among the benefits offered by CHAMPUS is psychiatric care in RTCs:
Residential treatment is a specific level of care to be differentiated from acute, intermediate and long term hospital care, where the least restrictive environment is maintained to allow for normalization of the patient's surroundings.
Id. § 199.6(b)(4)(vii). An RTC provides children and adolescents under the age of 21 "a total 24-hour therapeutically planned group living and learning situation where psychotherapeutic interventions can take place." Id.
*89 To be certified as a CHAMPUS-authorized provider, CHAMPUS regulations require the RTC to: (1) be accredited by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO) under the Consolidated Standards Manual (CSM); (2) comply with the CHAMPUS Standards for Residential Treatment Centers Serving Children and Adolescents with Mental Disorders ("CHAMPUS RTC Standards"), as issued by the Director of the Office of CHAMPUS ("OCHAMPUS"); (3) enter into a participation agreement with OCHAMPUS which, in part, sets forth certain conditions for payment of benefits; and (4) be licensed and operational for at least six months. Id. § 199.6(b)(4)(vii)(A).
Health Management Services International ("HMS"), an independent contractor, assists in the certification and coverage determinations. Specifically, OCHAMPUS contracted for HMS to: (1) review new RTC applications and conduct on-site surveys of both newly applying and previously authorized RTCs; (2) draft revised CHAMPUS RTC Standards for consideration by the Department of Defense; and (3) review the medical necessity and appropriateness of mental health care provided in individual cases.[2] Thus, HMS assists in both the certification and coverage processes.
HMS is required to apply the JCAHO CSM standards, the CHAMPUS RTC Standards, and state licensing requirements in its surveys. Based on the surveys, HMS submits its findings and recommendation regarding certification to the Mental Health Program Branch of OCHAMPUS, which evaluates the findings and recommendation to ensure they conform to regulatory requirements. OCHAMPUS retains all final decisionmaking authority, and determines what action should be taken. Before terminating a previously authorized RTC's certification, OCHAMPUS sends out a notice of proposed termination. The RTC may meet with OCHAMPUS officials and submit a plan of corrective action, after which the facility is resurveyed. A denial of certification or termination of certification is appealable under the administrative appeal process set forth in 32 C.F.R. § 199.10.
Certified RTCs may receive reimbursement for the cost-shared amount of covered benefits. The care must be medically or psychologically necessary. Id. § 199.4(b)(4)(vii). The RTC must obtain preadmission authorization and continuing periodic approval ("concurrent review") of the medical or psychological necessity of the care at least every 30 days. Preadmission authorization and concurrent review are performed by HMS, another CHAMPUS mental health contractor, or a fixed price contractor. Under the current administrative appeal procedures, an RTC or beneficiary may request reconsideration of the initial coverage determination within 90 days' notice thereof. Id. § 199.10(b)(1). The reconsideration is performed by the same contractor who made the initial determination, but by a member who was not involved in making the initial determination in order to ensure an independent review of the case.[3]Id. § 199.10(b)(2). If a beneficiary is dissatisfied with the reconsideration, a hearing may be requested. Id. § 199.15(i)(1). An RTC, however, may request a hearing only if the issue involves a "waiver of liability," that is, whether the RTC reasonably could have been expected to know that the services would not be covered. Id. § 199.15(i)(1), (2). In most cases, however, the reconsideration determination is the final step in the administrative appeal process for RTCs.
In cases in which hearings are held, the hearing is a nonadversarial administrative proceeding conducted before a hearing officer.[4]Id. § 199.10(d)(2). The function of the *90 hearing is to bring out all relevant and material facts and information. OCHAMPUS's Office of Appeals and Hearings prepares a "hearing file" which contains all of the records that have been assembled in the appeal and copies of "peer reviews," a review by a private board-certified psychiatrist of all the medical documentation submitted by the patient or RTC. OCHAMPUS's position is based on the hearing file. At the conclusion of the hearing, the hearing officer issues a recommended decision. Id. § 199.10(d)(12). The final decision is made by the Director of OCHAMPUS or the Assistant Secretary of Defense, usually the former. Id. § 199.10(e).
At any level of appeal, the reviewer may address any issues presented by the record and is not limited to addressing the specific issues raised by the appealing party. Id. § 199.10(a)(9). This may result in the denial of coverage for previously authorized care. Additionally, the burden of proof is on the appealing party to establish affirmatively by substantial evidence the appealing party's entitlement to coverage. Id. § 199.10(a)(3).
Plaintiff challenges several aspects of the certification and coverage processes. With respect to the certification process, plaintiff contends that OCHAMPUS improperly has delegated standard-setting authority to HMS, or in the alternative, that HMS nonetheless has created and applied new standards, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. ("APA"), and the Due Process Clause of the Fifth Amendment. With respect to the coverage process, plaintiff contends that the regulation permits the retroactive denial of coverage in violation of due process. Plaintiff also challenges the limitations on the ability of RTCs to cross-examine peer reviewers, the allocation of the burden of proof, and the curtailment of the appeal procedure. Finally, plaintiff seeks relief from delays in the processing of appeals for both certification and coverage determinations.

Standing
Defendants contend that plaintiff lacks standing to challenge the certification and coverage processes on the grounds that plaintiff has failed to establish that its members have suffered any concrete injury. An association has standing to bring suit on behalf of its members if:
(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 342, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). Defendants dispute only whether plaintiff has satisfied the first requirement.[5]
As with all plaintiffs, a member has standing to sue in his or her own right by demonstrating: (1) particularized and concrete injury; (2) a causal relationship between the injury and the defendant's actions; and (3) a likelihood that the injury can be redressed by judicial relief. Albuquerque Indian Rights v. Lujan, 930 F.2d 49, 55 (D.C.Cir.1991). Defendants contend that the absence of factual allegations that specific members have been injured by the certification and coverage processes renders plaintiff without standing. On a motion to dismiss, however, "general factual allegations of injury resulting from the defendant's conduct may suffice [because] we `presume[] that general allegations embrace those specific facts that are necessary to support the *91 claim."[6]Lujan v. Defenders of Wildlife, ___ U.S. ___, ___, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). Plaintiff's allegations that several members have been decertified and have experienced difficulties concerning coverage determinations due to mismanagement of the CHAMPUS program are sufficient to establish injury-in-fact. Accordingly, defendants' motion to dismiss is denied.[7]

Summary Judgment

The Certification Process
First, plaintiff claims that OCHAMPUS improperly has delegated standard-setting authority to HMS. Defendants' unrebutted affidavits establish, however, that OCHAMPUS has not delegated such authority. OCHAMPUS awarded a contract to HMS to conduct on-site surveys of RTCs, draft revised CHAMPUS RTC Standards for consideration by the Department of Defense, and review the medical necessity and appropriateness of mental health care provided in individual cases. Declaration of Terri Katsouranis ¶ 11. In its survey evaluations, HMS is obliged to apply the standards required by the regulations. Id. ¶¶ 12, 13; First Declaration of William E. Stone, M.D. ¶ 11. HMS makes recommendations to OCHAMPUS, which makes all final decisions regarding certification. Katsouranis Declaration ¶ 20; First Stone Declaration ¶¶ 12-13.
To the extent that plaintiff challenges this narrower delegation of authority, plaintiff's challenge fails. Express statutory authority is not required for delegation of authority by an agency; delegation generally is permitted where it is not inconsistent with the statute. See Tabor v. Joint Bd. for the Enrollment of Actuaries, 566 F.2d 705, 708 n. 5 (D.C.Cir.1977). As delegation of inspection and utilization review services and services relating to the development of regulations is not inconsistent with the CHAMPUS statute, 10 U.S.C. §§ 1071 et seq., and OCHAMPUS retains and exercises all final decisionmaking authority, the Court finds nothing improper with OCHAMPUS's delegation of authority to HMS.[8]See Tabor, 566 F.2d at 708 n. 5; Office of Management and Budget Policy Letter on Inherently Governmental Functions, 57 Fed.Reg. 45096, 45103 (1992).
In the alternative, plaintiff claims that, regardless of whether OCHAMPUS has *92 delegated standard-setting authority to HMS, HMS routinely applies its own ad hoc standards rather than those prescribed by regulations, in violation of the rulemaking procedures of the APA and, in some instances, in violation of the CHAMPUS regulations.[9] Plaintiff identifies five such areas. The Court addresses each of these in turn. Disposition of these issues on summary judgment are appropriate as they do not involve factual disputes, but instead, disputes about the interpretation of the various standards to be applied to RTCs.[10]
RTCs occasionally use "restraint" and "seclusion" in managing patients, both of which require a qualified physician's order. Plaintiff claims that HMS has based its certification recommendations on expanded definitions of "restraint" and "seclusion." Specifically, plaintiff alleges that HMS has expanded "restraint" to include physical holding, and "seclusion" to include confinement in an unlocked room, neither of which requires a physician's order under the CHAMPUS RTC Standards. In determining an RTC's compliance with the JCAHO CSM, CHAMPUS RTC Standards, and state licensing requirements, however, OCHAMPUS requires that, where the criteria differ, the RTC must comply with the most stringent one. With respect to "restraint" and "seclusion," the CSM standard is the most stringent. The CSM defines "restraint" as "the use of a physical or mechanical device to involuntarily restrain the movement of the whole or a portion of a patient's body as a means of controlling his/her physical activities in order to protect him/her or others from injury." Second Stone Declaration ¶ 6. It defines "seclusion" as "the involuntary confinement of a patient alone in a room which the patient is physically prevented from leaving, for any period of time." Second Stone Declaration ¶ 5. These definitions of "restraint" and "seclusion" clearly encompass physical holding and confinement in an unlocked room, the standards applied by HMS. Therefore, assuming HMS requires a physician's order for all of these situations, HMS has not "expanded" these definitions.
Next, plaintiff claims that HMS impermissibly has expanded two other requirements, in violation of the CHAMPUS regulations: the requirement for use of licensed personnel and the frequency of review of treatment plans. With respect to licensed personnel, plaintiff contends that the regulations do not require that marriage, family, pastoral, and mental health counselors be licensed. Plaintiff misinterprets the regulations. CHAMPUS regulations require that "all services shall be provided by or under the supervision of a qualified mental health provider (refer to paragraph (c)(3)(ix) of section 199.4)." 32 C.F.R. § 199.6(b)(4)(vii)(C)(5). The referenced sections states that a qualified mental health provider must "practic[e] within the scope of his or her license." It further states that "[q]ualified *93 mental health providers [include] ... marriage, family, pastoral, and mental health counselors, under a physician's supervision." Id. § 199.4(c)(3)(ix)(A). The requirement that marriage, family, pastoral, and mental health counselors be licensed is later reiterated in the subsection specifying the conditions for use of these types of counselors: "These providers must also be licensed or certified to practice as a marriage or family counselor, pastoral counselor, or mental health counselor by the jurisdiction where practicing." Id. § 199.6(c)(3)(iv)(A)(6). Accordingly, the Court finds that HMS's consideration of the use of non-licensed counselors in its certification recommendation is a mere application of the regulation, not an expansion of it.
With respect to treatment plans, plaintiff alleges that HMS has created a 30-day review requirement. The relevant CHAMPUS regulation requires that RTC care be provided under an "individualized treatment plan that provides for ... timely reviews and updates as appropriate ... that reflects alterations in the treatment regimen, the measurable goals/objectives, and the level of care required for each of the patient's problems...." Id. § 199.4(b)(4)(vii)(C)(iv). The CHAMPUS RTC Standards state that "this [treatment] plan shall be reviewed and revised not less than every 90 days." CHAMPUS RTC Standards, at D-13. OCHAMPUS has deemed 30-day review the appropriate period, which HMS thus applies. Katsouranis Declaration ¶ 18; First Stone Declaration ¶ 19. Courts must defer to an agency's interpretation of its own regulation unless that interpretation is plainly inconsistent with the language of the regulation. San Luis Obispo Mothers for Peace v. United States Nuclear Regulatory Comm'n, 789 F.2d 26, 30 (D.C.Cir.), cert. denied, 479 U.S. 923, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986). The Court upholds OCHAMPUS's interpretation as it is consistent with the regulation and applicable standards.
Plaintiff also claims that HMS, on its own initiative, has imposed staffing ratio requirements, beyond those imposed by state licensing requirements. The CHAMPUS RTC Standards do not impose any specific level or ratio of RTC staffing, but do state that "the [RTC] shall provide the staff necessary to insure the proper care, treatment, and safety of all patients." CHAMPUS RTC Standards, at D-5. As previously mentioned, OCHAMPUS requires that the most stringent of the three sets of criteria be applied. As all RTCs at least must be licensed, state staffing requirements act as a floor. Katsouranis Declaration ¶ 17. OCHAMPUS's policy, applied by HMS, of considering several factors, such as the number of patients, their ages, and types of illnesses treated, in determining whether an RTC is sufficiently staffed is consistent with, and not an expansion of, the CHAMPUS RTC Standards.
Finally, plaintiff claims that HMS impermissibly has imposed the requirements of a psychiatric hospital on RTCs by requiring RTCs to have a "professionally managed milieu" at all times. That is, OCHAMPUS, and thus HMS, require that a licensed professional be on duty and available for supervision and support at all times. Again, the Court finds that this requirement is a reasonable interpretation of CHAMPUS regulations. While the regulations clearly distinguish between hospital care and residential care, the regulations are equally clear that residential care must provide "a total 24-hour therapeutically planned group living and learning situation." 32 C.F.R. § 199.6(b)(4)(vii). OCHAMPUS's interpretation that a 24-hour therapeutic environment requires that a licensed professional be on duty and available for supervision and support at all times is reasonable and consistent with the regulation. See San Luis Obispo Mothers for Peace, 789 F.2d at 30.

The Coverage Process
Plaintiff alleges numerous due process violations throughout the appeal process for coverage determinations. As a threshold matter, before claiming entitlement to due process safeguards, plaintiff must show that RTCs have a constitutionally protected property interest in reimbursement for services provided. Mathews v. Eldridge, 424 U.S. 319, 331, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Protected property interests *94 are created by a source independent of the Constitution, such as by statute, legal rules, or a mutually explicit understanding. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 600, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Based on the participation agreement and CHAMPUS regulations, plaintiff's members have such a property interest in reimbursement, limited to those services that are provided in accordance with CHAMPUS regulations. Having found that plaintiff's members have a protected property interest, the Court proceeds to address plaintiff's challenges to the administrative appeal procedures.
First, plaintiff challenges OCHAMPUS's authority to review an entire episode of care on appeal rather than the specific issue appealed by the RTC. The regulation providing for this authority states:
An appeal decision at any level may address all pertinent issues which arise under the appeal or are otherwise presented by the information in the case record (for example, the entire episode of care in the appeal), and shall not be limited to addressing the specific issue appealed by a party.
32 C.F.R. § 1991.10(a)(9). Plaintiff contends that this policy violates due process because it has a chilling effect on an RTC's right to appeal by permitting retroactive denial of previously authorized coverage. It is well-settled that an agency is not required to limit its review to the issues appealed, and may review the entire record on appeal provided it gives adequate notice to the parties that an appeal will put the entire decision at issue. E.g., Williams v. Sullivan, 970 F.2d 1178, 1182-83 (3d Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1294, 122 L.Ed.2d 685 (1993). Publication of the regulation in the Code of Federal Regulations constitutes adequate notice.[11]Cf. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 383, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) (holding that publication in Federal Register constitutes adequate notice of conditions of insurance); Gronda v. Secretary of Health & Human Serv., 856 F.2d 36, 39 (6th Cir.1988) (approving of notice through published regulation that would provide "a warning that any appeal will put the entire decision at issue"), cert. denied, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). Accordingly, as a matter of law, review of a case in its entirety on appeal is consistent with due process.
Next, plaintiff challenges the validity of two aspects of the hearing procedures: limitation of the right of RTCs to cross-examine peer reviewers, insofar as OCHAMPUS refuses to bear the financial cost of producing them as witnesses, and the allocation of the burden of proof on RTCs.[12] Plaintiff's claim that these procedures violate the requirements for formal adjudications under the APA is without merit. The APA requirements for adjudication are triggered only where an adjudicatory hearing is required by statute. 5 U.S.C. § 554(a); Koniag, Inc., Village of Uyak v. Andrus, 580 F.2d 601, 609 (D.C.Cir.1978), cert. denied, 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978). The CHAMPUS statute, 10 U.S.C. §§ 1071 et seq., however, sets forth no requirement for formal adjudication.
Plaintiff also claims that due process requires such hearing rights. Due process requires that a person be given notice *95 and a meaningful opportunity to be heard before being finally deprived of a property interest. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The specific procedural protections required depends on a balancing of three factors: (1) the gravity of the private interest affected; (2) the risk of erroneous deprivation under the current procedure, and the probable value, if any of additional procedural safeguards; and (3) the interest of the government, including the burdens of additional or substitute procedures. Id. at 335, 96 S.Ct. at 903. Here, as reimbursement is not based upon financial need, the gravity of the private interest is minimal in comparison to welfare and disability cases. Eldridge, 424 U.S. at 338, 96 S.Ct. at 905. The risk of erroneous deprivation based on the written evaluations of peer reviewers is not weighty in light of the judicial recognition that written medical reports, though subject to "professional disagreement," generally are reliable and probative.[13]Id. at 343, 96 S.Ct. at 907 (citing Richardson v. Perales, 402 U.S. 389, 402-06, 91 S.Ct. 1420, 1428-30, 28 L.Ed.2d 842 (1971)). Finally, the government has an interest in the conservation of administrative resources. Id. 424 U.S. at 347, 96 S.Ct. at 909. Upon consideration of the foregoing and evaluating the appeal procedures as a whole, the Court finds that due process does not require the additional protections asserted by plaintiff.[14]
Plaintiff's final claim is that OCHAMPUS impermissibly has curtailed the administrative appeal process for RTCs. Under the current appeal procedure, RTCs are entitled to only one level of appeal, a reconsideration, which is before the same contractor which made the initial determination, but before a different reviewer. Plaintiff contends that this procedure, which eliminated the right to a formal hearing before OCHAMPUS, violates the due process rights of RTCs. A governmental agency may provide that the appeal on disputed coverage claims may be reviewed by a private contractor, without a further right of appeal, consistent with due process. Schweiker v. McClure, 456 U.S. 188, 198, 102 S.Ct. 1665, 1671-72, 72 L.Ed.2d 1 (1982) (holding that Medicare administrative appeal procedure did not violate due process where claimant was entitled only to review of a written record by a private contractor, and could receive an oral hearing, which was before the same contractor, only where amount in controversy exceeded certain amount).[15] Accordingly, the Court finds that the current appeal process satisfies due process.

Conclusion
For the foregoing reasons, the Court denies defendants' motion to dismiss and motion for a more definite statement, and grants defendants' motion for summary judgment. The Court denies plaintiff's motion for summary judgment.
NOTES
[1] The CHAMPUS regulations are published at 32 C.F.R. part 199. Since the filing of dispositive motions, revisions have been published. CHAMPUS; Partial Hospitalization, 58 Fed.Reg. 35400 (1993) (codified at 32 C.F.R. part 199 (1993)). These revisions deal largely with the establishment of a CHAMPUS benefit for partial hospitalization, and do not affect the instant litigation. To avoid confusion, this opinion cites to the regulations printed in the 1992 version of the Code of Federal Regulations.
[2] HMS has been responsible for the RTC surveys since January 1, 1990, the start-work date of its contract.
[3] If the initial determination and reconsideration were conducted by a fixed price contractor, a provider or beneficiary may request a second reconsideration by an independent contractor because of the potential financial incentives for fixed price contractors to make strict utilization decisions.
[4] A hearing officer is not an employee of the federal government; rather, OCHAMPUS [obtains] hearing officers through contract. With respect to the requirement that the hearing be nonadversarial, there is an exception for appeals involving a provider sanction. § 199.10(d)(2).
[5] The Court finds that plaintiff has met the second and third requirements as well. Plaintiff clearly satisfies the germaneness requirement: its purpose is to promote excellence in the care, delivery, accountability, and cost-effectiveness of psychiatric services to children, and the CHAMPUS program partially reimburses RTCs for providing such services. Albuquerque Indian Rights v. Lujan, 930 F.2d 49, 53 (D.C.Cir.1991) ("`[g]ermaneness' is satisfied by a `mere pertinence' between litigation subject and organizational purpose."). Additionally, the systemic injunctive relief that plaintiff seeks does not require the participation of its individual members. See Center for Auto Safety v. National Hwy. Traffic Safety Admin., 793 F.2d 1322, 1329 n. 44 (D.C.Cir. 1986) (noting that individual participation is required where there are conflicts of interest within the organization, a specific factual setting is needed to illuminate the issues, or individualized damage determinations are necessary).
[6] At this stage of the litigation, both parties have filed cross-motions for summary judgment. Therefore, plaintiff also must set forth specific facts by affidavit or other evidence supporting particularized injury. Defenders of Wildlife, ___ U.S. at ___, 112 S.Ct. at 2137. In plaintiff's motion for summary judgment, plaintiff alleges particular instances of harm to specific members which defendants do not dispute. E.g., Plaintiff's Statement of Material Facts Not in Dispute ¶¶ 37, 45; Defendants' Response ¶¶ 37, 45. The Court thus finds that plaintiff has set forth specific facts sufficient to continue to support plaintiff's standing.
[7] Defendants also move to dismiss on the ground that plaintiff has failed to exhaust administrative remedies. Where Congress has not required exhaustion, whether to require exhaustion is within the discretion of the district court. McCarthy v. Madigan, ___ U.S. ___, ___, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). Because plaintiff challenges the legality and constitutionality of the certification and coverage procedures, rather than the results of individual cases in which certification or coverage was denied, the Court finds that exhaustion should not be required. See id. at ___ _ ___, 112 S.Ct. at 1086-88 (setting forth factors to be considered in whether to require exhaustion).

Finally, defendants move to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Although the allegations in the complaint are general in nature, the Court finds that the complaint satisfies the notice pleading requirements of Fed.R.Civ.P. 8(a)(2). Accordingly, the motion to dismiss for failure to state a claim is denied.
Because defendants have withdrawn their motion for a more definite statement, that motion is denied as moot.
[8] Plaintiff's speculation about possible ways in which an improper delegation could have taken place is insufficient to create a genuine issue of material fact on the issue of the scope of delegation. See Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ..."); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.) ("A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue."), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).
[9] Plaintiff also claims that the alleged use of unpublished standards and the extensive delays in obtaining a certification decision violate the due process rights of RTCs. In order to show a due process violation, plaintiff must first show that RTCs have a constitutionally protected property interest in certification. Mathews v. Eldridge, 424 U.S. 319, 331, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). As plaintiff has not produced any agreement, regulations or other source that would provide a basis for finding that RTCs have a protected property interest in new or continuing certification, the Court finds that due process safeguards are not implicated at the certification stage. Cf. Senape v. Constantino, 936 F.2d 687, 689-91 (2d Cir.1991) (holding that, in light of state's discretion in determining the qualifications and status of Medicaid providers, providers had no property right in status as a qualified health care provider); Geriatrics, Inc. v. Harris, 640 F.2d 262, 263-64 (10th Cir.) (holding that nursing home did not have a constitutionally protected property interest in continued certification because the provider agreement was only for one year, and contained no provision for renewal), cert. denied, 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981).
[10] Plaintiff's unsupported allegation that the draft set of recommended CHAMPUS RTC standards  prepared by HMS pursuant to its contract with OCHAMPUS  has been circulated to HMS surveyors is not sufficient to rebut defendants' sworn statements that the draft standards have not been distributed to surveyors or used in any surveys conducted to date. See Fed.R.Civ.P. 56(e); Posey, 702 F.2d at 105. Contrary to plaintiff's characterization, the comments of HMS official Dr. William E. Stone in a March 2, 1992, speech do not support the contention that the proposed draft standards have been distributed to HMS surveyors or applied by HMS.
[11] Alternatively, the Court finds that where a regulation authorizes review of an entire case, as section 199.19(a)(9) does, due process does not require notice. See DeLong v. Heckler, 771 F.2d 266, 268 (7th Cir.1985) (upholding authority of Appeals Council of the Social Security Administration pursuant to regulation to review sua sponte an award of benefits without providing individual notice).
[12] Plaintiff also contends that, by refusing to assume the burden of producing the peer reviewers as witnesses at the hearing, defendants are violating CHAMPUS regulations. Section 199.10(a)(11)(ii) states, in relevant part:

Right to examine parties to the hearing and their witnesses. Each party to the hearing shall have the right to produce and examine witnesses, ... [and] to question opposing witnesses on any matter relevant to the issue even though the matter was not covered in the direct examination....
By the terms of the regulation, the right to cross-examine is limited to cross-examination of witnesses who are present at the hearing. Therefore, defendants have not violated this regulation.
[13] Assuming that veracity and credibility may arise as significant issues in some individual cases, the current procedures contain adequate safeguards. Plaintiff does not dispute that the peer reviews are available upon request in advance of the appeal, and that RTCs themselves may call the peer reviewers as witnesses.
[14] Plaintiff also raises a due process claim based on the delays in the processing of appeals. The coverage appeal process was revised in November 1991, which includes limiting appeals as of right to one level, that is, reconsideration, and eliminating a right to a formal hearing for most providers. Therefore, the Court finds that this issue is moot. Natural Resources Defense Council v. United States Nuclear Regulatory Comm'n, 680 F.2d 810, 813-14 (D.C.Cir.1982).
[15] The Supreme Court expressly rejected the proposition that a claimant is entitled to additional administrative review by a government rather than a contractor-appointed hearing officer. McClure, 102 S.Ct. at 1671.